# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**In Re: Huckleberry Partners LLC**

**ADAM KANTER,**

          **Appellant,**

v.                                              Case No: 6:23-cv-2329-PGB

**MARK C. HEALY,
HUCKLEBERRY PARTNERS,
LLC and BLOODWORTH LAW,
PLLC,**

          **Appellees.**

_____/

## ORDER

This cause comes before the Court without oral argument[1] upon Appellant Adam Kanter's ("**Mr. Kanter**") Initial Brief. (Doc. 11 (the "**Initial Brief**")). Appellee Huckleberry Partners LLC ("**Debtor Huckleberry**") has filed a Response Brief. (Doc. 28 (the "**Response Brief**")). Appellee Bloodworth Law, PLLC ("**Bloodworth**") has filed a Joinder in the Response Brief.[2] (Doc. 30). Mr.

---

[1] Although Mr. Kanter requests oral argument in this matter, the Court has examined the briefing and records and finds that "the facts and legal arguments are adequately presented" therein, and the "Court's decisional process would not be significantly aided by oral argument." (Doc. 11, p. 7); *see* FED. R. BANKR. P. 8019(b)(3).

[2] The Court notes that Debtor Huckleberry's Liquidating Agent, Mark C. Healy (the "**Liquidating Agent**"), was initially an Appellee in this matter. (*See* Doc. 1, pp. 3–4). However, after entering the Order that is the subject of this appeal, the Bankruptcy Court discharged the Liquidating Agent of his duties, including as to the instant appeal. (*E.g.*, Doc.

Kanter has not filed a reply to the Response Brief, and the time to do so has passed. After reviewing the record and briefing, the Bankruptcy Court's Order Granting Motion to Approve Compromise between Liquidating Agent and Bloodworth Law, PLLC (Doc. 3-1 (the "**Settlement Approval Order**")) is affirmed.

I.  **BACKGROUND**

In this appeal, Mr. Kanter challenges the Bankruptcy Court's approval of a compromise between creditor Bloodworth and the Liquidating Agent acting on behalf of Debtor Huckleberry in the bankruptcy action. (Doc. 11).

A.  **Events Preceding the Bankruptcy Case**

Debtor Huckleberry is a limited liability company that was organized in 2005 by three members: Mr. Kanter; his then-wife, Stephanie Kanter ("**Mrs. Kanter**"); and Henry James Herborn, III ("**Herborn**"). (*Id.* at p. 8). Debtor Huckleberry was organized to "acquire, build, own and operate" a shopping center. (*Id.*). In the Initial Brief, Mr. Kanter asserts that at the time Debtor Huckleberry was organized, Mr. Kanter held his own 35% membership interest along with Mrs. Kanter's 35% membership interest as tenants by the entirety, and that Herborn held the remaining 30% membership interest.[3] (*Id.*).

---

21, p. 2). Accordingly, Debtor Huckleberry and Bloodworth are presently the sole Appellees in this matter.

[3] The precise breakdown of the three members' respective interests in Debtor Huckleberry has been the subject of dispute in myriad venues, as has the question of whether Mr. Kanter and Mrs. Kanter (collectively, "**M/M Kanter**") held their interests individually or as tenants by the entirety. (*See, e.g.*, Doc. 11, p. 8; Doc. 3-8, pp. 2, 4; Doc. 3-2, pp. 23–25; Doc. 28, pp. 10–11).

In April 2015, Mr. Kanter initiated what ultimately became protracted divorce proceedings against Mrs. Kanter. (*Id.* at pp. 8–9). Shortly after Mr. Kanter initiated these proceedings, in February 2016, Mr. Kanter was named as a Defendant in a lawsuit filed by Mrs. Kanter and Herborn in state court in Orange County, Florida (the "**State Court Action**"). (*Id.* at p. 8). The underlying complaint in the State Court Action was amended five times. (*Id.*).

On July 8, 2017, Herborn and Mrs. Kanter signed an Action by Written Consent of the Members of Huckleberry Partners, LLC (Doc. 4-6 (the "**Action by Written Consent**")). Therein, Herborn and Mrs. Kanter agreed that, in the State Court Action, Debtor Huckleberry "may hire and/or retain legal counsel to protect its interests" and that Herborn was "authorized to hire and/or retain legal representation and direct the litigation on behalf of" Debtor Huckleberry. (*Id.*).

In the Initial Brief, Mr. Kanter represents that on October 17, 2019, a Final Judgment was entered in the M/M Kanter divorce proceedings awarding him sole ownership of both spouses' membership interests in Debtor Huckleberry. (Doc. 11, p. 9). However, less than a month later, Mr. Kanter filed for personal bankruptcy. (Doc. 3-1, p. 3). As a result, the state court in the State Court Action ruled that Mr. Kanter became dissociated as a matter of law from Debtor Huckleberry. (*Id.*).

On January 31, 2018, Herborn executed an engagement letter with Bloodworth. (Doc. 3-2, pp. 8–14 (the "**Engagement Letter**")). The Engagement Letter noted as to the "Scope of Services" that Herborn had "asked the firm to represent Huckleberry Partners, LLC" in connection with the ongoing State Court

3

Action. (*Id.* at pp. 8, 12). The Engagement Letter also described that the hourly rate for Bloodworth's attorneys would be $200.00 per hour, the hourly rate for its paralegal would be $100.00 per hour, and the firm would also collect a 20% contingency fee for the total amount recovered in the case. (*Id.* at pp. 10–11).

In March of 2021, the Third Amended Complaint ("**TAC**") was filed in the State Court Action. (Doc. 3-2, p. 15).[4] The named Plaintiffs in the TAC were Herborn, both individually and derivatively as a member on behalf of Debtor Huckleberry, and also Debtor Huckleberry pursuant to the written consent of its members.[5] (*Id.*). The Defendants named in the TAC were Mr. Kanter, Mrs. Kanter, and R J Property Group ("**RJ**"). (*Id.*). Debtor Huckleberry was also named as a nominal Defendant. (*Id.*).

The crux of the allegations in the TAC asserted that M/M Kanter had breached their fiduciary duties to Debtor Huckleberry in myriad ways, including by improperly taking out loans for Debtor Huckleberry and by taking improper distributions from Debtor Huckleberry. (*See* Doc. 3-3, pp. 2–9). It further averred that M/M Kanter had created or maintained the Defendant corporation, RJ, to receive such improper transfers from Debtor Huckleberry. (*See* Doc. 3-2, pp. 18–

---

4   The TAC was included as an exhibit to one of the filings with the Bankruptcy Court and spans portions of two separate docket entries in the record on appeal. (Doc. 3-2, pp. 15–60; Doc. 3-3, pp. 1–24). This explains the unusual appearance of the citations to the TAC in the instant Order.

5   The Court notes that, although the caption names that Debtor Huckleberry is a Plaintiff "pursuant to the written consent of its members," each of the Counts brought on behalf of Debtor Huckleberry indicates that it has been brought derivatively by Herborn. (Doc. 3-2, pp. 44, 49; Doc. 3-3, pp. 2, 6, 9, 12).

19). The TAC additionally contained counts brought directly by Herborn against M/M Kanter for fraud. (Doc. 3-3, pp. 14–24).

The TAC was signed by two attorneys in separate signature blocks: Bloodworth attorney L. Reed Bloodworth ("**Mr. Bloodworth**") signed as the attorney for Debtor Huckleberry and counsel for a separate firm (the "**Seiler firm**") signed as the attorney for Herborn.[6, 7] (Doc. 3-3, p. 24). The aforementioned attorneys later filed a Fourth Amended Complaint ("**FAC**") in the State Court Action, again signing under separate signature blocks in the same manner as they had in the TAC. (Doc. 3-17, pp. 44–50; Doc. 3-18; Doc. 3-19, pp. 1–15).[8]

## B. The Underlying Bankruptcy Case and the Settlement

On June 17, 2022, Debtor Huckleberry filed its Voluntary Petition for Bankruptcy under Chapter 11 of the Bankruptcy Code. (Doc. 11, p. 9). Herborn was the Debtor in Possession during the bankruptcy case, presumably because Mr. Kanter had been dissociated from Debtor Huckleberry. (*Id.*; *see* Doc. 3-1, p. 3). On August 19, 2022, Bloodworth filed its proof of an unsecured claim in the amount of $140,715.97 for "[l]egal services rendered." (Doc. 3-1, p. 3). Mark C. Healy was

---

[6] To the Court's knowledge, Mr. Kanter did not object to the Liquidating Agent's request that the Bankruptcy Court approve the settlement that he reached with the Seiler firm in the bankruptcy case. (*See* Doc. 11, pp. 20–21).

[7] The State Court Action was ultimately removed from the state court and became an adversary proceeding within the bankruptcy case. (Doc. 3-1, p. 2 n.3).

[8] Similar to the TAC, the FAC spans three different docket entries in the record on appeal, hence the unusual citations to this filing.

5

later appointed as the Liquidating Agent for Debtor Huckleberry. (*Id.*). In this role, the Liquidating Agent was tasked with prosecuting causes of action that posed a conflict of interest for Debtor Huckleberry, including the Bloodworth Claim. (*Id.*; *see* Doc. 11, p. 9).

On March 24, 2023, the Liquidating Agent timely objected to the Bloodworth Claim. (Doc. 3-2 (the "**Liquidating Agent's Objection**"); *see also* Doc. 3-1, p. 3). Therein, the Liquidating Agent argued: (1) that Herborn may not have had the requisite authority to engage Bloodworth to represent Debtor Huckleberry; (2) that following the filing of the TAC, there were no claims being brought *directly* on behalf of Debtor Huckleberry, and that these claims were instead being brought derivatively by Herborn; and (3) the Liquidating Agent questioned the reasonableness of the fees. (Doc. 3-2, pp. 4–6).

The Liquidating Agent ultimately negotiated a settlement with Bloodworth (the "**Settlement**"), and on May 23, 2023, the Liquidating Agent filed a motion seeking the Bankruptcy Court's approval of the Settlement. (Doc. 3-7 (the "**Motion to Approve Settlement**")). The Settlement required Debtor Huckleberry to pay Bloodworth $105,000.00 to resolve all aspects of the Bloodworth Claim. (Doc. 3-1, p. 4). Importantly, it also eliminated the potential that Bloodworth could bring an administrative claim regarding the contingency fee portion of its agreement with Debtor Huckleberry. (*Id.*).

Mr. Kanter objected to the Motion to Approve Settlement, and on November 8, 2023, the Bankruptcy Court held a trial on the matter. (Doc. 3-1, p. 1). On

6

November 22, 2023, the Bankruptcy Court issued an Order approving of the Settlement, and that Order is the subject of the instant appeal. (*Id.*; Doc. 1).

## II. LEGAL STANDARD

This Court has jurisdiction over this appeal from the final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158. In bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its resolution of legal questions *de novo*. *Coady v. D.A.N. Joint Venture III, L.P.*, 588 F.3d 1312, 1315 (11th Cir. 2009) (per curiam).

A bankruptcy court's order approving of a compromise or settlement is reviewed for an abuse of discretion. *Daughtrey v. Rivera* (*In re Daughtrey*), 896 F.3d 1255, 1273 (11th Cir. 2018) (citing *Christo v. Padgett*, 223 F.3d 1324, 1335 (11th Cir. 2000)). "This means that a bankruptcy court's approval of a settlement agreement must be affirmed unless the court's decision is (1) completely devoid of minimum evidentiary support or (2) bears no rational relationship to the evidence." *Kenny v. Critical Intervention Servs. Inc. (In re Kenny)*, 630 B.R. 853, 859 (M.D. Fla. 2021) (citation omitted).

The bankruptcy court must consider each of the following factors, known as the *Justice Oaks* factors, to determine whether to approve a settlement:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

7

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990) (citations omitted); *see also SE Prop. Holdings, LLC v. Gaddy Elec. & Plumbing, LLC (In re Gaddy)*, 851 F. App'x 996, 1000 (11th Cir. 2021)[9] (applying the *Justice Oaks* factors).

A district court's "review of a bankruptcy court's application of the *Justice Oaks* factors is quite limited," as the court reverses "only when the bankruptcy court approved a compromise that fell 'below the lowest point in the range of reasonableness.'" *See Gaddy*, 851 F. App'x at 1000 (quoting *Martin v. Pahiakos (In re Martin)*, 490 F.3d 1272, 1275 (11th Cir. 2007)). Consequently, the bankruptcy court must simply "make a pragmatic decision based on all [of the] equitable factors." *Kenny*, 630 B.R. at 853 (citing *McMasters v. Kapila (In re Morgan)*, No. 10-60373-CIV-MORENO, 2011 WL 13185742, at *4 (S.D. Fla. Feb. 15, 2011)).

## III.  DISCUSSION

As an initial matter, Mr. Kanter asserts that the Bankruptcy Court abused its discretion by reaching the *Justice Oaks* factors since Bloodworth did not have a valid claim in the first instance. (Doc. 11, p. 12). This stance is supported, entirely, by Mr. Kanter's arguments regarding the merits of Bloodworth's underlying claim. (*See id.* at pp. 12–16). However, Mr. Kanter provides no legal support for the notion that a bankruptcy court should determine, as a threshold matter, that a creditor's

---

[9] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

8

claim has merit before applying the *Justice Oaks* factors. (*See id.*); *cf. Justice Oaks*, 898 F.2d at 1549 (holding that the bankruptcy court "never had to *decide* the merits" of the claims at issue in approving the settlement thereof, and that it only had to assess the creditors' "*probability* of succeeding on those claims"). The Court is not persuaded by Mr. Kanter's argument, which expressly contravenes the Eleventh Circuit's analysis in *Justice Oaks*. *See* 898 F.2d at 1549. The Court thus considers the Bankruptcy Court's application of each of the *Justice Oaks* factors in turn.

### A. Probability of Success in the Litigation

The Bankruptcy Court found that the first *Justice Oaks* factor, concerning the probability of success in litigation, weighed in favor of approving the Settlement. (Doc. 3-1, p. 5). In so finding, it expressly considered Mr. Kanter's position that the Liquidating Agent's Objection had a strong likelihood of success. (*Id.* at p. 6). Specifically, it cited Mr. Kanter's assertion that Florida Statute § 605.05024 and case law "should be read to conclude that Bloodworth cannot be paid out of Debtor's funds" because, when a member asserts a derivative claim for a company, the attorney bringing the derivative claim represents the *member* and not the *company*. (*See id.*). The Bankruptcy Court rejected that this argument should result in its denial of the Settlement, explaining:

> [T]he case law cited by Mr. Kanter does not speak directly to the issue and, given the parties' conflicting views of the statute and the lack of authority interpreting the statute, the Court finds that Bloodworth may have a reasonable chance of success in defending against the Objection to [the] Bloodworth Claim. Furthermore, at a minimum, Bloodworth

9

> may have a claim for quantum meruit because there is no dispute that the firm expended time providing services and obtained a ruling that resolved the dispute regarding corporate authority to act on behalf of Debtor.

(*Id.*). In finding this factor supported approval of the Settlement, the Bankruptcy Court also reasoned that such approval would "alleviate the need to proceed to trial" and "the uncertainty attendant to litigation." (*Id.*).

On appeal, Mr. Kanter argues that the Bankruptcy Court abused its discretion in applying this factor. (*See* Doc. 11, pp. 12–18). Mr. Kanter relies upon the same arguments rejected by the Bankruptcy Court below and asserts that the probability of success on the Liquidating Agent's Objection "is 100%." (*Id.* at p. 18).

In applying the *Justice Oaks* factors, the bankruptcy court is not required to assess the merits of the settled claims and must only consider the probability of those claims' success. *See Justice Oaks*, 898 F.2d at 1549; *Kenny*, 630 B.R. at 858; *Romagosa v. Thomas*, No. 6:06-CV-301-ORL-19JGG, 2006 WL 2085461, at *5 (M.D. Fla. July 25, 2006), *aff'd*, 236 F. App'x 498 (11th Cir. 2007). In performing this task, the bankruptcy court is simply required to ensure that the settlement does not "fall below the lowest point in the range of reasonableness." *Martin*, 490 F.3d at 1275. "To do so, the bankruptcy judge has only to canvass the issues." *Kenny*, 630 B.R. at 861 (citing *Ramagosa*, 2006 WL 2085461, at *5).

Here, the Bankruptcy Court canvassed the issues, and determined that the sources cited in support of Mr. Kanter's argument were not dispositive as to whether Bloodworth was entitled to payment from Debtor Huckleberry's funds. (Doc. 3-1, p. 6). Moreover, the Bankruptcy Court found that Bloodworth had a

reasonable chance of success in defending against the Liquidating Agent's Objection. (*Id.*). Mr. Kanter has not established that the Bankruptcy Court abused its discretion in making these determinations. *See Daughtrey*, 896 F.3d at 1273.

First, the Court agrees that the sources cited by Mr. Kanter are not decisive here. For example, Mr. Kanter argues that Florida Statute § 605.0805 "allows [a] Court to award fees to the derivative counsel, but ONLY if successful in the litigation and ONLY from the proceeds of the successful litigation." (Doc. 11, p. 13). However, settlements, by their very nature, are to anticipate such eventualities and create certainty in the face of uncertainty. Here, the Bankruptcy Court has not ordered that Debtor Huckleberry pay Bloodworth's fees and expenses pursuant to the cited statute. (*See* Doc. 3-1). Instead, it has simply approved of a settlement that *Debtor Huckleberry* negotiated through its Liquidating Agent in order to mitigate its risk. (*Id.*). Put differently, the Bankruptcy Court has merely approved that Debtor Huckleberry reasonably determined that eliminating the risk posed by litigating the Bloodworth Claim made it worth paying the agreed upon sum. (*See id.*). Accordingly, Mr. Kanter's argument under this statute is misplaced.

Mr. Kanter also heavily relies upon *Gonzalez v. Chillura*, 892 So. 2d 1075 (Fla. 2d DCA 2004), in support of his argument. (Doc. 11, pp. 13–16). Although this case bears some relevance to the issues at hand, it is also not dispositive. In *Gonzalez*, the issue before the court was whether a law firm should be disqualified from "concurrently representing the plaintiff in a shareholder derivative action while at the same time representing the same plaintiff in litigation he [wa]s

11

pursuing individually against the corporation." 892 So. 2d at 1077. The court held that the law firm could carry on in both cases, finding that it represented the *shareholder* in the derivative action, since there was no record support for the notion that the attorney had an attorney-client relationship with the corporation. *Id.* at 1076–77. The court also rejected the argument that the very *nature* of the case as a derivative action gave rise to an attorney-client relationship between the shareholder's attorney and *the corporation itself*. *Id.* at 1078 (reasoning that "[i]f the mere fact of pursuing a derivative claim" gave rise to such a relationship, "there would be no way for the derivative plaintiff to ever have conflict-free counsel"). Thus, the precise issue addressed in *Gonzalez* differs from the issue here.

*Gonzalez* is also clearly distinguishable on the facts. *Id.* at 1076–77. Unlike in *Gonzalez*, here, there is abundant evidence that Bloodworth intended to represent Debtor Huckleberry *rather than* Herborn, the party in whose name the derivative claim was brought. For example, Herborn had separate counsel in the State Court Action. (*See, e.g.*, Doc. 3-3, p. 24). Further, the Engagement Letter demonstrates that Bloodworth was retained by Herborn to represent *Debtor Huckleberry's interests* in the State Court Action. (Doc. 3-2, pp. 8–14). Additionally, Mr. Bloodworth testified at trial that Debtor Huckleberry was his client in the litigation and that this fact never changed. (Doc. 12-2, 27:25–28:2). He further testified that, prior to the unpaid amounts giving rise to the Bloodworth Claim, Bloodworth's invoices had been paid by Debtor Huckleberry for its work done in the case. (*Id.* 18:17–19:5). Indeed, Mr. Bloodworth noted that Debtor

12

Huckleberry had initially brought *direct claims* in the case, and the allegations were only amended to raise *derivative claims* for Debtor Huckleberry for strategic reasons. (*Id.* 28:12–29:1). Finally, the Liquidating Agent testified at trial that he had personally reviewed the billing provided in support of the Bloodworth Claim, and he did not notice any billing entries that would have indicated services for anyone besides Debtor Huckleberry. (*Id.* 61:14–62:13).

Moreover, Mr. Kanter does not meaningfully grapple with the Bankruptcy Court's finding that, even if Mr. Kanter's view of the law is ultimately correct, Bloodworth could still have a claim for quantum meruit against Debtor Huckleberry for the benefits it conferred in the State Court Action. (*See* Doc. 11, p. 13). Additionally, the Bankruptcy Court's consideration that the Settlement would eliminate the need for a trial and the uncertainty posed thereby is well taken by this Court. (Doc. 3-1, p. 6); *see Chira v. Saal (In re Chira)*, 567 F.3d 1307, 1312–13 (11th Cir. 2009) (holding that the bankruptcy court did not abuse its discretion by approving a settlement agreement after noting the "uncertainty surround[ing]" the potential claim). As a result, Mr. Kanter has not demonstrated that the Bankruptcy Court abused its discretion as to this factor.

### B.   Difficulties in Collection

The Bankruptcy Court found the second factor—the "difficulties, if any, to be encountered in the matter of collection"—to be neutral. (Doc. 3-1, p. 6). More precisely, the Bankruptcy Court agreed with the Liquidating Agent's argument that this factor need not be considered, as the Settlement involved "settling a claim

13

against Debtor's assets rather than settling a potential claim of Debtor that would increase the Estate's assets." (*Id.* at pp. 6–7). Mr. Kanter does not address this *Justice Oaks* factor in his argument on appeal. (Doc. 11); *see also Kenny*, 630 B.R. at 861 ("The 'difficulties in collection' factor is not dispositive on whether a settlement is reasonable." (collecting sources)). Therefore, the Court does not find that the Bankruptcy Court abused its discretion in applying this factor.

### C. Complexity of the Litigation and the Expense, Inconvenience, and Delay Necessarily Attending It

The Bankruptcy Court found that the third *Justice Oaks* factor, the complexity of the litigation and the expense, inconvenience, and delay necessarily attending it, also weighed in favor of approving the Settlement. (Doc. 3-1, p. 7). The Bankruptcy Court again noted that the issues surrounding Herborn retaining Bloodworth to represent Debtor Huckleberry in the State Court Action are "not as clear as Mr. Kanter contends." (*Id.*). It also expressed concern that "[l]itigating the settled matter would require time, effort, and expense that would likely exceed the amounts at issue." (*Id.*). Thus, the Bankruptcy Court ultimately found that, "based on the evidence admitted at the Trial," this factor weighed in favor of its approval of the Settlement. (*Id.*).

On appeal, Mr. Kanter argues that the "clear legal authority and simplistic application of the law to the facts in this case cries out for a summary disposition." (Doc. 11, p. 18). For the reasons explained in detail above, the Court cannot agree. *See* discussion *supra* Section III.A.

14

Mr. Kanter additionally asserts that "the cost estimate by Proponents is wildly overstated and presumes the validity of the litigation claims." (Doc. 11, p. 19). However, the Bankruptcy Court expressly found the evidence presented at trial demonstrated that the litigation "would require time, effort, and expense that would likely exceed the amounts at issue." (Doc. 3-1, p. 7); *see Christo*, 223 F.3d at 1336 (affirming the bankruptcy court's approval of a settlement and reasoning that, "[e]ven if the likelihood of [appellee] succeeding in his claim . . . was slight, the bankruptcy court correctly noted that defense of any litigation, even that which is frivolous, is both time-consuming and costly"); *see also Romagosa*, 2006 WL 2085461, at *3 (noting that, in a bankruptcy appeal, "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses" (citing *SouthTrust Bank of Ala., N.A. v. Thomas (In re Thomas)*, 883 F.2d 991, 994 (11th Cir. 1989), *cert. denied*, 497 U.S. 1007 (1990)).

Here, Mr. Kanter has not demonstrated that the Bankruptcy Court abused its discretion in finding this factor weighed in favor of allowing the Settlement. *See Daughtrey*, 896 F.3d at 1273. The record supports the Bankruptcy Court's finding regarding the expense, time, and effort that would likely be involved in litigating the Bloodworth Claim. (*See* Doc. 3-1, p. 7). For example, Mr. Bloodworth testified that the State Court Action "was very litigious. Everything was fought, and it was the most contentious litigation I've probably ever been a part of." (Doc. 12-2, 34:7–

10). Such litigiousness tends to increase the costs associated with litigation, and litigation of the Bloodworth Claim would involve many of the same players as the underlying State Court Action. Further, as the Liquidating Agent referenced in his testimony, shareholder disputes tend to be more expensive than other types of litigation. (*Id.* 55:9–11). Moreover, the Bankruptcy Court's finding as to this factor is supported by the Liquidating Agent's testimony regarding the fact that he would need to undertake additional discovery in the event the Settlement was rejected. (*See, e.g.*, 66:19–23, 67:10–12, 68:8–17). For example, the Liquidating Agent noted that litigating the reasonable amount of fees would likely require depositions of Mr. Bloodworth and Herborn, as well as the retention of an expert witness. (*E.g.*, *id.* 66:19–23, 67:10–12, 68:8–17). Indeed, the Liquidating Agent testified that cost concerns were one of the factors that led to his proposing the Settlement:

> Q. In your best business judgement as a fiduciary, is this a reasonable settlement?
> A. Yes.
> Q. And why is that?
> A. **Well, it -- it stops, it limits costs going forward. We're not going to have a big fight about it.** It limits additional exposure to a contingency claim. You know, I think it's a fair and reasonable settlement, and that's why we proposed it.

(*Id.* 71:10–18). Under the circumstances, Mr. Kanter has not demonstrated that the Bankruptcy Court abused its discretion in its application of this factor. *See Daughtrey*, 896 F.3d at 1273.

### D. Paramount Interest of the Creditors

Finally, the Bankruptcy Court found that the fourth *Justice Oaks* factor, the paramount interest of creditors, weighed in favor of approving the Settlement. (Doc. 3-1, p. 8). In so finding, the Bankruptcy Court noted that "[t]he only objecting party is Mr. Kanter," who, despite having a financial interest in Debtor Huckleberry, "is not a creditor." (*Id.*). It further considered that the Settlement "would eliminate the risk of the Bloodworth Claim being allowed in full" and "the additional possibility of Bloodworth being entitled to a contingency fee from any recovery" in the State Court Action. (*Id.*). The Bankruptcy Court also noted that allowing the Settlement eliminated the "further expense associated with litigating the Objection to the Bloodworth Claim." (*Id.*).

On appeal, Mr. Kanter posits that the Bankruptcy Court erred in its application of this factor, citing that "the procedural posture of this bankruptcy case is post-confirmation" and thus "there are no longer creditors and equity holders." (Doc. 11, p. 20). However, Mr. Kanter provides no legal authority for the proposition that this Court's analysis of the *Justice Oaks* factors can or should change post-confirmation. (*Id.*). Mr. Kanter additionally argues that there was no evidence at the hearing regarding the views of Debtor Huckleberry's creditors with respect to the Settlement. (*Id.*). However, that is not strictly true, as "the lack of objection from any creditor weighs in favor of finding that the settlement is in the creditors' best interest." *Kenny*, 630 B.R. at 863 (citing *In re Able Body Temp. Servs., Inc. v. Herendeen*, Nos. 8:13-bk-684-CED, 8:14-cv-1631-T-23, 2015 WL

17

791281, at *4 (M.D. Fla. Feb. 25, 2015) (affirming bankruptcy court's approval of settlement where only one creditor objected)). Thus, the absence of any objections from Debtor Huckleberry's creditors suggests that they approved of the Settlement. *See id.* Further, creditor Bloodworth—a party to the Settlement—clearly believes that the Settlement is in its best interests.[10] (*See* Doc. 3-1, p. 8.).

Finally, perhaps because of his view that the Liquidating Agent's Objection to the Bloodworth Claim would be certain to prevail, Mr. Kanter does not address the Bankruptcy Court's concern regarding the expense of additional litigation, including that Bloodworth may be entitled to a contingency fee on any recovery in the State Court Action. (*See* Doc. 11, pp. 20–21). However, like the Bankruptcy Court, the instant Court does not share Mr. Kanter's view that the Objection to the Bloodworth Claim is certain to prevail. And, as Mr. Bloodworth testified, there are millions of dollars at stake in the State Court Action. (Doc. 12-2, 36:8–24). Thus, a 20% contingency fee on this sum could be substantial, and the Bankruptcy Court properly considered this fact in finding the fourth *Justice Oaks* factor weighed in favor of approving the Settlement. (*See* Doc. 3-1, p. 8).

Because the Court finds that the Settlement did not "fall below the lowest point in the range of reasonableness," the Bankruptcy Court's Order Approving the Settlement (Doc. 3-1) is affirmed. *See Martin*, 490 F.3d at 1275.

---

[10] Moreover, to the extent that Mr. Kanter continues to hold a financial interest in Debtor Huckleberry, the Court also notes that Mr. Kanter is not the only party who holds such an interest—Herborn does as well. *See, e.g.*, *supra* p. 2 n.3.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Bankruptcy Court's Order Granting Motion to Approve Compromise between Liquidating Agent and Bloodworth Law, PLLC (Doc. 3-1) is **AFFIRMED**;

2. The appeal is **DISMISSED**; and

3. The Clerk of Court is **DIRECTED** to close the case.

**DONE AND ORDERED** in Orlando, Florida on September 27, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

19